UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **SECURITIES & EXCHANGE COMMISSION,** <br><br> Plaintiff, <br><br> v. <br><br> **KRM Services, LLC,** *et al.* <br><br> Defendants. | Civil No. 1:19-cv-01424-RDA-MSN |

## REPORT AND RECOMMENDATION

This matter comes before the Court on plaintiff Securities and Exchange Commission's ("plaintiff" or "SEC") Motion for Default Judgment (Dkt. No. 15). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

I.  PROCEDURAL HISTORY

On November 8, 2019, plaintiff filed a Complaint in this Court alleging Unregistered Offer or Sale of Securities Violations (§ 5(a) and (c) of the Securities Act) and Misrepresentation and other Deceptive Acts (Securities Act § 17(a)(1)-(a)(3) & Exchange Act § 10(b) and Rule 10b-5(a)-(c)). (Dkt No. 1) at 10-12. On December 2, 2019, plaintiff filed an affidavit of service, which reflected that a registered agent of KRM Services, LLC ("KRM") had been served at its registered office in Florida on November 26, 2019. (Dkt. No. 7). KRM's response to the

1

Complaint was due December 17, 2019. Plaintiff requested the Clerk of Court entry of default against KRM on January 24, 2020 (Dkt. No. 9), which was entered on January 27, 2020 (Dkt. No. 14).

On February 3, 2020, plaintiff filed its motion for default judgment against defendant KRM. (Dkt. No. 15). A hearing was held on February 21, 2020 where plaintiff appeared and no one appeared on behalf of defendant KRM. (Dkt. No. 19). The Court took the matter under advisement, as defendant Roberto Clark ("Clark") had not yet been served. Following service of defendant Clark, the matter was removed from the Court's active docket pending settlement discussions and an active, parallel criminal proceeding. (Dkt. No. 31, 35). On September 11, 2020, plaintiff filed an amended memorandum in support of the motion for default judgment against KRM, which reduced the amount sought through disgorgement in accordance with the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020). (Dkt. No. 32). Following numerous extensions, plaintiff and defendant Clark submitted a consent judgment to the Court on March 22, 2021 (Dkt. No. 44), which was granted on April 14, 2021 (Dkt. No. 46). The only remaining matter in this case is plaintiff's motion for default judgment against defendant KRM.

**II.      FACTUAL BACKGROUND**

The following facts are established by plaintiff's Complaint (Dkt. No. 1) as well as by its memorandum in support of the motion for default judgment (Dkt. No. 16) and amendment to plaintiff's motion for default judgment. (Dkt. No. 32).

Defendant KRM is a Florida LLC incorporated by defendant Clark, its manager, founder, and majority owner, with principal places of business in Arlington, Virginia and Chevy Chase, Maryland. (Dkt. No. 1) at 2. Clark had authority over all decisions relating to the operation of KRM pursuant to the Operating agreement. *Id.* at 9. Clark's relevant actions were within the

scope of his employment with KRM. *Id.* The Complaint alleges that Clark solicited loans for KRM and investments in unregistered securities, claiming that the funds were being used to market and develop a motorized surfboard known as the "Jetboard." *Id.* at 1. Defendants claimed to hold the exclusive right to sell the Jetboard in the United States. *Id.* at 3. Defendant Clark, on behalf of KRM, met with investors and offered promissory notes and equity in KRM in exchange for investment in the company. *Id.* Defendants received approximately $350,000 in investments in KRM securities through at least eighteen contracts for the sale of unregistered securities. *Id.* at 4-5. No reasonable effort was made to ascertain whether these were accredited investors nor were the securities registered, as required by the Securities Act. *Id.*

The investments were secured through material misrepresentations by Clark, acting on behalf of KRM. *Id.* at 5. Clark represented that investment was needed to fulfil existing orders for the Jetboard, yet no such orders existed. *Id.* The Complaint identifies multiple instances of misrepresentations concerning existing orders and contracts with an international cruise line and rental companies. *Id.* at 5-6. These representations identified specific profits that KRM would make, which had no basis in the truth. *Id.* Defendants also produced fabricated purchase orders, misrepresented bank account statements, and referenced non-existent meetings. *Id.* at 7. These misrepresentations resulted in investments of approximately $350,000. *Id*. at 6.

Clark used the investor funds for personal expenses, including at least $41,000 spent at restaurants and bars, at least $19,000 for hotels, at least $15,000 paid to family members, at least $8,000 to department and clothing stores, at least $5,000 to convenience stores and gas stations, at least $3,000 to grocery and liquor stores, at least $1,000 to gyms, at least $1,500 to spas and beauty salons at least $1,000 to pet stores and groomers, at least $200 to a bail bondsman, and repayment to an earlier investor. *Id.* at 9. Defendant KRM has not disputed any of these facts.

**III.     JURISDICTION, VENUE, AND SERVICE OF PROCESS**

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. The Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1331 because the case raises questions of federal law under the Securities Act and the Exchange Act (15 U.S.C. §§ 77e(a) and (c), 77q(a), and 78j(b)). The Securities Act and the Exchange Act specifically provides that the district courts of the United States have subject matter jurisdiction over offenses relating to the Acts. 15 U.S.C §§ 77a, 77v(a), 78a, 78aa.

A court may exercise general or specific personal jurisdiction. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (internal citations omitted). Because KRM has a principal place of business within this district, it is a citizen of this district and this Court has general personal jurisdiction. *See*, *e.g.*, *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 WL 6506308, at *4 (E.D. Va. Oct. 27, 2015) ("absent exceptional circumstances, the defendant is only subject to the general jurisdiction of the forum state if it is the defendant's domicile").

Venue is proper in this District pursuant to § 22(a) of the Securities Act, 15 U.S.C. § 77v, and § 27(a) of the Exchange Act, 15 U.S.C. § 78aa, because defendants offered and sold unregistered securities, met with clients, made misrepresentations and other deceptive acts, and made contracts with residents of this district.

Defendants were successfully served process of a summons and the Complaint by private process server to KRM's Florida registered agent on November 26, 2019. (Dkt. No. 7). This service is proper under Florida law and Fed. R. Civ. P. 4.

**IV.     STANDARD FOR DEFAULT JUDGMENT**

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the complaint are deemed to be admitted.

V. **ANALYSIS**

    A. **Offer or Sale of Unregistered Securities**

Plaintiff alleges that the defendants committed violations of the Security Act § 5(a) and (c), which prohibit selling or offering unregistered securities through the means and instrumentalities of interstate commerce. 15 U.S.C. § 77e(a), (c). A security is defined by the Act to include notes and investment contracts. 15 U.S.C. § 77b(a)(1). A contract, transaction or scheme is an investment contract whenever a "person [1] invests his money [2] in a common enterprise [3] and is led to expect profits solely from the efforts of the promoter or a third party. .

. ." *Bailey v. J.W.K. Prop., Inc.*, 904 F.2d 918, 920 (4th Cir. 1990) (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)).

Here, defendant Clark, on behalf of KRM, offered and sold promissory notes and interests in KRM. (Dkt. No. 1) at 3-5. Investors expected to make profits from their investments and had no meaningful control over the investment. Plaintiff asserts that investors were led to expect profits solely from KRM's efforts. *Id. at 4*. Therefore, the interests and notes were securities. These securities were not registered, as the Security Act requires, and were not exempt from the registration requirements. *Id.* KRM had offices in Maryland and Virginia and made sales and offers through email, text, and phone conversations to investors in Maryland, Virginia, and Pennsylvania. *Id.* at 5. Because defendant Clark, acting on behalf of KRM, used the means of interstate commerce to offer and sell unregulated securities, KRM is in violation of the Security Act.

Accordingly, because plaintiff has established all elements, the undersigned recommends a finding that defendants offered or sold unregistered securities under the Securities Act § 5(a) and (c).

### B.   Securities Fraud

Plaintiff additionally alleges KRM committed securities fraud through its misrepresentations and deceitful actions in connection with the sale of securities. Section 10(b) of the Exchange Act is violated if the defendant "(1) made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities." *SEC v. Pirate Investor LLC,* 580 F.3d 233, 239 (4th Cir. 2009) (citing *McConville v. SEC*, 465 F.3d 780, 786 (7th Cir. 2006)); 15 U.S.C. § 78j; 17 C.F.R. 240.10b-5. Section 17(a) of the Securities Act is similarly violated when in the offer or sale of securities and by the means of interstate

commerce, (1) defendant used a device, scheme or artifice to defraud, or (2) obtained money through false statements of material fact, and (3) engaged in transactions, practices, or course of business that would operate as a fraud on the purchaser. 15 U.S.C. § 77q(a)(1)-(3).

First and second under the Exchange Act, defendant engaged in both deceptive conduct and made materially false representations. Clark made material misrepresentations when he stated that he had already sold and had orders to sell Jetboards that would bring in specific amounts of profit. (Dkt. No. 1) at 6. KRM had no contracts for the sale of Jetboards. Clark, as manager, majority owner, and founder, had the authority to make such statements on behalf of KRM. Clark's representations about profit and contracts were material because they were the type of information a reasonable investor would rely upon when making investing decisions. Clark engaged in further deceptive conduct by fabricating documents, including purchase orders. *Id.* at 7-8.

Third, defendant had the intent to defraud its investors. Scienter refers to "'a mental state embracing intent to deceive, manipulate, or defraud.'" *Pirate Investor*, 580 F.3d at 241 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). Clark intended investors to rely on his misrepresentation of profits and contracts to induce them to invest in KRM. He knew that his statements regarding existing orders were untrue.

Fourth, the Court looks to various factors to determine whether fraudulent activity coincides with a securities transaction, including: "(1) whether a securities sale was necessary to the completion of the fraudulent scheme; (2) whether the parties' relationship was such that it would necessarily involve trading in securities; (3) whether the defendant intended to induce a securities transaction; and (4) whether material misrepresentations were disseminated to the public in a medium upon which a reasonable investor would rely." *SEC v. Woolf,* 835 F. Supp.2d

111 at 120 (citing *SEC v. Pirate Investor*, 580 F.3d at 244). As established above, KRM's issuance of notes and investment contracts constitute securities and those securities were at the center of his fraudulent scheme. Defendants induced securities transactions through misrepresentations. (Dkt. No. 1) at 5-8. Clark made his material misrepresentations directly to investors, such that a reasonable investor would rely upon his statements. Plaintiff has demonstrated that the misrepresentations and deceptive conduct were undertaken in connection with the sale of securities.

KRM has similarly violated the Securities Act by offering and selling securities from offices in Maryland and Virginia through email, text, and phone conversations to investors in Maryland, Virginia, and Pennsylvania. (Dkt. No. 1) at 5. As detailed above, Clark employed a scheme to defraud through material misrepresentations which resulted in a fraud upon the purchasers of those securities. KRM received investment income totaling approximately $350,000 through the fraudulent scheme. *Id.* at 4.

Plaintiff has sufficiently demonstrated violation of both the Securities Act and the Exchange Act for his fraudulent misrepresentations and deceptive conduct.

    **C.**        **Respondeat Superior**

Plaintiff alleges that KRM was used as an alter ego of Clark and seeks to reverse-pierce the corporate veil to reach the assets of KRM. When a corporation is used to perpetrate a fraud, as an individual's alter ego, the corporation can be held liable for the individual's acts. *C.F. Trust, Inc. v. First Flight L.P.*, 140 F. Supp. 2d 628, 644 (E.D. Va. 2001), aff'd. 338 F.3d 316 (4th Cir. 2003). Reverse piercing of the corporate veil offers a means of imposing liability for an underlying cause of action. *Id.* at 642. Here, Clark had unity of interest and full control over KRM. (Dkt. No. 1) at 9. As the majority owner and manager, he was the authorized signatory on

KRM's bank accounts, approved all expenditures, signed all notes, and contacted and solicited most investments. *Id.* No valid business purpose was served through Clark's acts, rather he induced investment in the name of KRM through misrepresentation of purchase orders and account statements and siphoned the money for his personal use. *Id.* For these reasons, KRM is the alter ego of Clark and piercing the corporate veil in reverse is appropriate.

Further, when an individual is acting within the scope of his employment, the doctrine of *respondeat superior* provides that the employer is liable for his actions. *See Edwards Bus. Mach., Inc. v. Virginia Union Univ.*, Case No. 3:10–CV–286, 2010 WL 4622168, *4 (E.D. Va. Nov. 4, 2010). Here, Clark was acting as a representative of KRM by soliciting investors and selling notes and investment contracts to invest in KRM for production of the Jetboard, a KRM product. (Dkt. No. 1) at 3. Under the doctrine of *respondeat superior*, KRM is liable for the acts of its employee, Clark.

## VI.     REQUESTED RELIEF

Plaintiff seeks permanent injunctive relief under the Securities Act and Exchange Act, disgorgement of benefits derived from misconduct, with prejudgment interest, and civil penalties. The undersigned considers each of plaintiff's request for relief in turn below.

### A.     Injunctive Relief

Plaintiff seeks a permanent injunction enjoining defendants from further violation of the Securities Act and Exchange Act. An injunction is appropriate when the SEC "demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." *SEC v. Moody*, Civil Action No. 3:18-cv-442 (JAG), 2019 WL 2494421, *4 (E.D. Va. Jun. 13, 2019). In considering the likelihood of future violations, Courts consider the

"(1) the degree of scienter involved on the part of the defendant, (2) the isolated or recurrent nature of the infraction, (3) the defendant's recognition of the wrongful nature of his conduct, (4) the sincerity of his assurances against future violations, and (5) the likelihood, because of defendant's professional occupation, that future violations might occur." *Id.* at *4-5. The factors weigh in favor of granting an injunction in this case. Clark misled investors for over two years, taking approximately $350,000 from multiple investors and eighteen contracts, and spending it on his personal expenses. (Dkt. No. 1) at 4, 9. He intentionally fabricated documents and lied to investors repeatedly. *Id.* at 5-8. He was ultimately criminally prosecuted for these acts and pled guilty. (Dkt. No. 44). On January 29, 2021, Clark was sentenced to 72 months in prison, ordered to pay $419,194.40 in restitution, and he agreed to the entry of a civil judgment in the amount of $355,169.16 on April 14, 2021. (Dkt. No. 46). Clark also agreed to the entry of a permanent injunction, enjoining hm from participating in the issuance, offer, or sale of any security. *Id.* Because KRM could continue illegal activity, it is appropriate to enjoin defendant KRM from further violations of the Securities Act and Exchange Act.

      **B.**      **Disgorgement**

Disgorgement aims to return the gains causally related to the violation and prevent unjust enrichment. Plaintiff has calculated the sum of all investments, minus payments back to investors, to total $339,449. In *Liu v. SEC*, 140 S. Ct. 1936 (2020), the Supreme Court held that that disgorgement should not exceed the wrongdoer's net profits. Accordingly, plaintiff recalculated the disgorgement sought based upon the net profits after deducting appropriate business costs. (Dkt. No. 32). Plaintiff has calculated the reasonable approximation of KRM's legitimate business expenses to be $42,948.52 for travel, salaries, insurance, prototypes, shipping, and other expenses. Deducting this amount from the total, plaintiff requests

$296,500.48 plus prejudgment interest since the first investor payment, which equates to $54,256.35.

### C. Civil Penalties

The Court may award a civil penalty in the amount of a defendant's gross pecuniary gain. This number is calculated similarly to disgorgement, but acts as a penalty by not allowing for a deduction of money that was returned to victims. *SEC v. Amerindo Investment Advisors, Inc.*, No. 05 Civ. 5231(RJS), 2014 WL 2112032, *11 (S.D.N.Y. May 6, 2014) ("Otherwise, a defendant who paid back all of the gains before judgment could practically nullify the statutory penalty"). Because KRM has not made an effort to distinguish the amount paid to Clark as opposed to KRM, the undersigned recommends KRM pay the full amount of gross pecuniary gain, totaling $361,579.00.

## VII. RECOMMENDATION

For the foregoing reasons, the undersigned recommends:

1. Granting plaintiff's Motion for Entry of Default Judgment (Dkt. No. 15);

2. Enjoining KRM from violating the registration and anti-fraud provisions of the federal securities laws;

3. Ordering KRM to pay disgorgement in the amended amount of $296,500.48;

4. Ordering KRM to pay prejudgment interest of $54,256.35 on the amount of disgorgement;

5. Ordering KRM to pay a civil penalty of $361,579.00.

## VIII. NOTICE

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as

11

follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

August 26, 2021
Alexandria, Virginia